

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

DEREK ISHAQUE,

Defendant.

Case No.:  23-cr-02528-H-1

**ORDER DENYING DEFENDANT'S MOTION TO PRECLUDE**

[Doc. No. 68.]

On March 27, 2026, Defendant Derek Ishaque, represented by retained counsel, filed a motion to preclude from use at trial the factual propositions in his withdrawn plea agreement.  (Doc. No. 68.)  On April 6, 2026, the Government filed a response in opposition to Defendant's motion to preclude.  (Doc. No. 69.)  On April 13, 2026, Defendant filed a reply.  (Doc. No. 70.)  On April 20, 2026, the Court held a hearing on Defendant's motion to preclude.  For the reasons below, the Court denies Defendant's motion to preclude.

### Background

On December 14, 2023, the Government filed an information charging Defendant with conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347 and 371.  (Doc. No. 1.)  On December 14, 2023, Defendant appeared before the Magistrate Judge,

1

entered a plea of not guilty, and waived indictment in open court. (Doc. No. 2.) On January 9, 2024, Defendant pled guilty, pursuant to a written plea agreement, before the Magistrate Judge to the one count of conspiracy to commit healthcare fraud in the information. (Doc. Nos. 11, 12, 13.)

Defendant's written plea agreement set forth a detailed factual basis for his guilty plea as follows:

The following facts are true and undisputed:

1. Beginning on or about January 1, 2019, and continuing through at least September 6, 2020, there was an agreement between Defendant and others, including individuals in SCP's billing department, to willfully execute a scheme to unlawfully defraud Medicare and Tricare through the submission of fraudulent claims by billing Medicare Part D and Tricare for medications prescribed to SNF residents on a skilled stay, despite the fact that SCP was paid for many of those medications through per diem payments by the SNF, and despite Medicare and Tricare statutes, regulations, and rules prohibiting such claims.

2. At all times relevant to the crime charged in the Information:

a. Medicare Part A was a health care benefit program that helped its beneficiaries cover the cost of, among other things, inpatient care in hospitals and skilled nursing facility care.

b. Medicare Part D was a health care benefit program that helped its beneficiaries cover the cost of prescription medications. Plans that offer Medicare drug coverage are run by private insurance companies that follow rules set by Medicare, including Optum Rx.

c. Tricare was a health care benefit program for active duty service members, active duty family members, National Guard and Reserve members and their family members, retirees and retiree family members, survivors, and certain former spouses that helped its beneficiaries cover the cost of health care, including prescription medications.

d. Medicare Part A, Medicare Part D, and Tricare, were all health care benefit programs for purposes of the Health Care Fraud statute at 18 U.S.C. § 1347.

e. Superior Care Pharmacy, Inc. (SCP), was an entity that owned close door pharmacies providing pharmaceutical services to skilled nursing facilities (SNFs) in and around San Diego County.

f.      Defendant was a 49 percent owner of SCP.

g.      Defendant controlled SCP's billing department and determined how SCP would bill health care benefit programs, including Medicare and Tricare.

h.      Medicare statutes and regulations required SNFs to bill Medicare Part A, through the Part A Medicare Administrative Contractor (MAC), in a consolidated bill for the majority of services provided to Medicare beneficiaries in a Medicare covered SNF stay (called a "skilled" stay), including pharmaceutical services.

i.      SNFs provided healthcare benefits and services to its residents on skilled stays, for instance, physical therapy, occupational therapy, and speech therapy services.

j.      SCP contracted with SNFs to provide pharmaceutical services to Medicare beneficiaries on a skilled stay in exchange for the SNF paying a per diem rate for most medications, and the SNF paying additional amounts for certain excluded medications.

k.      SNFs used part of the payment by Medicare Part A for beneficiaries on a skilled stay to pay SCP for their pharmaceutical services.

l.      42 U.S.C. § 1395w-102(e)(2)(B) stated, "A drug prescribed for a part D eligible individual that would otherwise be a covered part D drug under this part shall not be so considered if payment for such drug as so prescribed and dispensed or administered with respect to that individual is available (or would be available but for the application of a deductible) under part A or B for that individual."  This meant that SCP could not bill Medicare Part D for medications prescribed to SNF residents on a skilled stay since the only the SNF could appropriate bill for such medications as part of a consolidated bill to Medicare Part A, and payment for such medications were available under Medicare Part A.

m.      Tricare rules and regulations largely mirrored those of Medicare, including prohibiting pharmacies from billing Tricare for prescription medications for its beneficiaries in a SNF on a skilled stay since Tricare required the SNF to bill Tricare in a consolidated bill for nearly all of the care provided to such beneficiaries, including for prescription medications.

3.      On or about August 28, 2018, Defendant was emailed a copy of Optum Rx's 2018 Provider Manual.  That Manual explained that "Drug Products will never be covered through Medicare Parts A/B and the Medicare Part D [Prescription Drug Plan] at the same time."

4.    On or about December 30, 2018, Defendant was emailed an audit performed by Humana Pharmacy Solutions that made a final determination that over 200 claims made by SCP to Medicare Part D were paid in error because the beneficiary was on a Medicare Part A, skilled, stay at a SNF.

5.    Beginning no later than January 1, 2019, Defendant knew it was fraudulent for SCP to bill Medicare Part D for medications prescribed to SNF residents on a skilled stay, since such medications were already paid for by Medicare Part A.  Defendant also knew that it violated Tricare's similar rule for SCP to bill Tricare for medications prescribed to SNF residents on a skilled stay, since such medications were covered through Tricare's SNF Prospective Payment System.

6.    Defendant knowingly, willfully, and intentionally instructed SCP's billing department to bill Medicare Part D and Tricare for medications prescribed to SNF residents on skilled stays despite knowing Medicare and Tricare statutes, regulations, and rules prohibited such billing in order to increase SCP's revenues.

7.    One of the times that Defendant so instructed the billing department was on or about December 20, 2019, which was an overt act for the purpose of carrying out the conspiracy.

8.    SCP's submission of claims to Medicare Part D and Tricare for medications prescribed to SNF residents on a skilled stay violated Medicare and Tricare statutes, regulations, and rules prohibiting such claims, and therefore such claims were based on the deceitful pretense that the claims complied with Medicare and Tricare statutes, rules, and regulations.

9.    Between January 1, 2019, and September 27, 2019, Medicare Part D paid SCP $1,100,226.21 on claims for prescription medications to SNF residents on skilled stays even though SCP was already paid for many of those medications through the per diem rates paid by the SNFs, and even though Medicare statutes and regulations required bills for prescriptions medications to SNF residents on skilled stays come only from the SNF in a consolidated bill to Medicare Part A.

10.    Between January 1, 2019, and September 6, 2020, Tricare paid SCP $322,069.01 on claims for prescription medications for SNF residents on skilled stays even though SCP was already paid for many of those medications through the per diem rates paid by the SNFs, and even though Tricare rules required bills for prescriptions medications to SNF residents on skilled stays come only from the SNF in a consolidated bill to Tricare.

(Doc. No. 13 at 3–7 (footnote omitted).)

4

During the January 9, 2024 change of plea hearing, the Magistrate Judge addressed the factual basis for Defendant's guilty plea as follows:

> THE COURT: Before I can accept your guilty plea, I need to know that you actually committed a crime.  We call it a factual basis.
>
> . . .
>
> THE COURT: All right. Mr. Ishaque, you have the plea agreement there. Looking at pages three, four, five, six and seven of your plea agreement, there are a total of nine -- 10 paragraphs.  These paragraphs contain the facts of your involvement in this case.  You previously went over those with your attorney. You initialed the bottom of the pages to indicate that.
>
> Are all those paragraphs true and correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Thank you. Ms. Jenkins, do you concur in the factual basis?
>
> MS. JENKINS: I do, your Honor.
>
> THE COURT: Do you concur in your client's plea?
>
> MS. JENKINS: Yes, your Honor.

(Doc. No. 36 at 10–11.)  On January 31, 2024, the Court adopted the Magistrate Judge's findings and recommendations and accepted Defendant's guilty plea.  (Doc. No. 15.)

On October 17, 2024, Defendant filed a motion to withdraw his guilty plea.  (Doc. No. 31.)  On December 16, 2024, the Court granted Defendant's motion to withdraw his guilty plea.  (Doc. No 39.)

On September 11, 2025, the Government filed a motion to admit at trial Defendant's factual admissions in his withdrawn plea agreement.  (Doc. No. 57.)  Defendant opposed the motion.  (Doc. No. 61.)  In the briefing on the Government's motion to admit the factual basis evidence at issue, the parties primarily focused on whether the factual basis evidence is admissible under Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), and the Supreme Court's decision in United States v. Mezzanatto, 513 U.S. 196, 210 (1995).  (See Doc. No. 57 at 6–12; Doc. No. 61 at 2–5; Doc. No. 62 at 1–8; see also Doc. No. 64.)  Specifically, the parties disputed whether the Rule 410 waiver contained in Defendant's withdrawn written plea agreement was enforceable.  (See id.)

On November 10, 2025, the Court held a motion hearing on the Government's motion to admit the evidence, and the Court granted the Government's motion. (Doc. No. 63.)  The Court agreed with the Government that the Defendant's Rule 410 waiver in his withdrawn written plea agreement is enforceable and held that the Government is permitted to use the factual basis statements at trial during its case-in-chief.  (See Doc. No. 64 at 17–18.)  See United States v. Jim, 786 F.3d 802, 810 (10th Cir. 2015); United States v. Washburn, 728 F.3d 775, 782 (8th Cir. 2013); United States v. Sylvester, 583 F.3d 285, 294 (5th Cir. 2009); United States v. Burch, 156 F.3d 1315, 1321 (D.C. Cir. 1998); see also United States v. Puig Valdes, 138 F.4th 1231, 1238–39, 1244–45 (9th Cir. 2025); United States v. Rebbe, 314 F.3d 402, 404–09 (9th Cir. 2002).  By the present motion, Defendant moves to preclude from use at trial the factual basis propositions set forth in Defendant's withdrawn plea agreement.  (Doc. No. 68.)

### Discussion

In his current motion to preclude, Defendant states that he is not contesting the Court's prior determination that the Rule 410 waiver in his written plea agreement is enforceable.  (Doc No. 68 at 1.)  Rather, Defendant argues that the factual basis statements should be precluded pursuant to Federal Rule of Evidence 403 because the evidence is unduly prejudicial and improper and based on an incorrect understanding of the law.  (Id. at 1–2, 10–15; Doc. No. 70 at 1–6.)

Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Under Rule 403, relevant evidence may only be excluded "if its probative value is substantially outweighed by one or more of the articulated dangers or considerations."  United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000).

"FRE 403 favors admissibility, while concomitantly providing the means of keeping distracting evidence out of the trial."  Id.  "Rule 403 is meant to 'ensure that potentially

6

devastating evidence of little probative value will not reach the jury.'" United States v. Preston, 873 F.3d 829, 841 (9th Cir. 2017) (quoting United States v. LeMay, 260 F.3d 1018, 1026 (9th Cir. 2001)).  A district court's decision to exclude or admit evidence under Rule 403 is reviewed with "'considerable deference.'" United States v. Wiggan, 700 F.3d 1204, 1210 (9th Cir. 2012) (quoting Hankey, 203 F.3d at 1167).

Here, the evidence at issue is both relevant and highly probative of the health care fraud crime at issue.  The evidence is factual admissions from Defendant regarding his role and actions within the scheme at issue.  Further, this evidence is unique and non-cumulative in that there is not other pieces of evidence in the record containing the same or similar admissions by Defendant.  Cf. Wiggan, 700 F.3d at 1213 (explaining that "a decision regarding probative value must be influenced by the availability of other sources of evidence on the point in question").

Further, the evidence is not unfairly prejudicial.  Defendant contends that the statements at issue cast him in a guilty light improperly.  The Court disagrees.  The Ninth Circuit has explained:  "'Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403.'"  Hankey, 203 F.3d at 1172.  Here, Defendant in open court confirmed that the statements at issue are "true and correct" while he was under oath. (Doc. No. 36 at 10–11.)  There is no unfairness in permitting the jury to hear statements that Defendant himself, while under oath, confirmed are true and correct.

Further, there is no unfair prejudice in allowing the jury to hear this evidence because, to the extent Defendant now contends that these prior statements are inaccurate or rest on incorrect or faulty assumptions, Defendant can present evidence and argument supporting those contentions at trial.  For example, Defendant contends that the Government's case and the statements at issue fail to account for the nature of Defendant's business; the complexities around filling prescriptions for patients on skilled nursing stays; the mechanics of seeking reimbursement; the presence of independent actors (like Program Benefit Managers and clearinghouses); or the fact that Medicare itself has recognized that

coordination-of-benefits issues are complex enough to allow for a "pay-and-chase" reimbursement model.  (Doc. No. 70 at 2.)  Those are all issues that Defendant can address at trial through the presentation of contrary evidence and argument to the jury and careful attention to the Government's burden of proof.  Cf. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").

Moreover, any potential for unfair prejudice was mitigated by the Court precluding the Government from telling the jury that the statements at issue are contained in a "plea agreement."  (See Doc. No. 64 at 8, 18.)  During the motion hearing on the Government's motion to admit the evidence, the Court explained that the Government may only tell the jury that the statements were made "in a prior proceeding."  (See id.)

In addition, Defendant's reliance on the Ninth Circuit's decision in United States v. Sua, 307 F.3d 1150 (9th Cir. 2002), is misplaced.  (Doc. No. 68 at 10.)  Sua involved a situation where a criminal defendant wanted to introduce a plea agreement between the government and one of the witness at his trial (a codefendant) in an effort to demonstrate that the witness was innocent of certain counts that were dismissed in exchange for entering into the plea agreement.  307 F.3d at 1152.  The district court excluded this evidence under Rule 403, and the Ninth Circuit affirmed, holding that "a district court may properly exclude, under Fed. R. Evid. 403, a plea agreement offered for the purpose of establishing the government's belief in a person's innocence."  Id. at 1153.  Here, the plea agreement is not being offered for the purposes of establishing the government's belief in a person's innocence.  Rather, the Government is offering the factual admission within the plea agreement – admissions that Defendant, while under oath, stated were true and correct – in an effort to establish Defendant's guilt.  Therefore, the Ninth Circuit's holding in Sua is entirely inapplicable here.

In sum, there is no danger of unfair prejudice that substantially outweighs the highly probative value of the factual basis evidence at issue. As such, the Court, exercising its sound discretion, declines to preclude use of the factual basis evidence at trial under Federal Rule of Evidence 403.

## Conclusion

For the reasons above, the Court denies Defendant's motion to preclude from use at trial the factual propositions in his withdrawn plea agreement.

**IT IS SO ORDERED.**

DATED: April 20, 2026

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT